IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00049-CV

 

Bossier Chrysler-Dodge II, Inc. 

d/b/a Bossier Country,

                                                                      Appellant

 v.

 

James Riley,

                                                                      Appellee

 

 

 



From the 77th District Court

Freestone County, Texas

Trial Court No. 03-158-A

 



Opinion DENYING REHEARING



 








          In this opinion denying Bossier
Country’s motion for rehearing, we address two of the six grounds raised in the
motion: (1) this Court “overlooked admissions made by Riley” and other evidence
which conclusively establish Bossier Country’s entitlement to judgment on
Riley’s DTPA claims; and (2) this Court violated Bossier Country’s rights to
due process and due course of law by deciding the case on a theory “that was
never pleaded [or] tried below.”[1]

Riley’s “Admissions”

          Bossier Country argued in its
appellant’s brief and argues in the motion for rehearing that testimony
regarding Riley’s “unique” interpretation of his right to cancel conclusively
establishes Bossier Country’s entitlement to judgment on the DTPA claims
because this evidence establishes that Bossier Country did not make an
actionable misrepresentation and that Riley did not rely on any representations
made by Bossier Country.

          On cross-examination, Bossier Country’s
counsel asked Riley what provisions of the various documents executed by the
parties led him to believe that he had the right to cancel after Bossier got
him the financing indicated in the installment contract and the second MVPO. 
Riley responded by observing that the Conditional Sale and Delivery Agreement
specifically provides for a right to cancel by the Buyer (1) “at any time prior
to receiving the notification of approval of financing” or (2) “[i]f financing
is not approved on the proposed terms.”  Riley disagreed with Bossier Country’s
counsel about whether he had the right to cancel after Daimler Chrysler made
its financing decision only “if financing [was] not approved.”

          Bossier Country also refers to Riley’s
testimony that he continued to rely on the cancellation provisions of the
Conditional Sale and Delivery Agreement after he signed the installment
contract, “even after Bossier Country notified him that financing had been
approved.”

          Finally, Bossier Country refers to the
Rileys’ long distance telephone bill from the pertinent time period as
“irrefutable” evidence that Riley did not call Bossier Country to try to cancel
until the next morning, after Bossier Country received written notification
that financing had been approved.

          The Conditional Sale and Delivery
Agreement explicitly gave Riley the right to cancel (1) “at any time prior to
receiving the notification of approval of financing” or (2) “[i]f financing
[was] not approved on the proposed terms.” (emphasis added)  Riley testified
that it was “specifically explained” to him that this document would allow him to
back out of the deal.[2]

          Bossier Country observes that Riley
testified that he believed he still could back out “even though Bossier
actually got you the financing” (in the words of Bossier Country’s trial
counsel).  However, the financing actually approved by Daimler Chrysler differs
from the terms Riley agreed to with the salesperson Jason Banks.  Riley did
testify that, when he returned and signed the installment contract, Bossier
Country did “notify [him] specifically that [he] had, in fact, been approved on
those exact terms.”  Again however, “those terms” arguably are the terms
reflected in the installment contract rather than the terms Riley had
negotiated with Banks.  Thus, the jury had to resolve a disputed fact issue
regarding whether Daimler Chrysler ever approved financing for Riley at the
terms he negotiated with Banks.

          Regarding the moment when financing
was approved, Bossier Country contends that the evidence conclusively
establishes that financing was approved before Riley signed the installment
contract because: (1) the undisputed evidence shows that Riley had a 6:00 p.m.
appointment at Bossier Country which corresponds to the time when written
approval of financing was received and which is necessarily the time Riley came
in and signed the installment contract; and (2) the terms stated in the
installment contract and the second MVPO,  both of which list Daimler Chrysler
as the lienholder, reflect the precise terms of financing which Daimler
Chrysler approved.

          The record contains conflicting
evidence on this issue, however.  Riley testified that he returned to Bossier
Country only once that day, at mid-afternoon.  Banks testified that Riley
probably left after his second visit at 1:00 or 2:00 in the afternoon.  No one
testified that Riley kept the 6:00 appointment.  Thus, a fact issue existed as
to when Riley returned to Bossier Country and signed the installment contract.

          Nor can we agree that the mere fact
that the finance terms stated in the installment contract correspond exactly to
the terms ultimately approved by Daimler Chrysler conclusively establishes that
financing had been approved when the installment contract was prepared and
presented to Riley for execution.  Because Bossier Country did not receive
written notification that Daimler Chrysler had approved financing until 6:02
p.m. and because there is evidence that Riley signed the installment contract
several hours earlier, a fact issue existed regarding when Daimler Chrysler
approved financing.  And because a fact issue existed regarding when Daimler
Chrysler approved financing, a fact issue necessarily existed concerning when
(or if) Bossier Country accurately notified Riley that financing had been
approved.

          Finally, with regard to when Riley
called to cancel the deal, Bossier Country contends that the Rileys’ long
distance telephone bill conclusively establishes that he did not do so until
the following morning.  Riley testified that he discussed the matter with his
wife then called Bossier Country “the same afternoon” to cancel the deal.  From
this testimony, the jury could have inferred that Riley was home when he
called, but the jury did not necessarily have to so infer.  Moreover, the jury
could have inferred that Riley used a different telephone or a cell phone.  The
jury could also have inferred that the Rileys’ telephone bill was inaccurate. 
Accordingly, we cannot agree that their long distance telephone bill
conclusively establishes that Riley did not call Bossier Country until the
following morning to cancel the deal.

          In summary, the record contains
conflicting evidence about whether Daimler Chrysler ever approved financing for
Riley on the terms he negotiated with Banks, when Daimler Chrysler actually
approved financing, when or if Bossier Country accurately notified Riley that
financing had been approved, and when Riley called Bossier Country to cancel
the deal.  We must defer to the jury’s resolution of these disputed fact
issues.  See Pulley v. Milberger, 198 S.W.3d 418, 426-27 (Tex. App.—Dallas
2006, pet. denied); Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied).

Due Process/Due Course of Law

          Bossier Country also contends that
this Court violated Bossier Country’s rights to due process and due course of
law by deciding the case on a theory “that was never pleaded [or] tried
below.”  Specifically, Bossier Country argues that “Riley neither pleaded nor
proved that Bossier Country falsely represented, or failed to disclose, that
financing had been approved when he signed the Retail Installment Contract, or
that he detrimentally relied on any such representation.”

          Riley generally alleged the following
DTPA violations in his counterclaim:

(1) Bossier Country “represented that an
agreement conferred or involved rights, remedies, or obligations which it does
not have or involve, or which are prohibited by law”; and 

 

(2) Bossier Country “fail[ed] to disclose
information concerning goods or services which were known at the time of the
transaction and such failure to disclose was intended to include [sic] the
consumer into a transaction which the consumer would not have entered had the
information been disclosed.”

 

Bossier Country did not specially except to
Riley’s pleadings.

          We have already recited the pertinent
evidence.  Riley’s counsel, in her opening statement, highlighted the fact that
the Conditional Sale and Delivery Agreement permitted Riley to cancel “if
financing [was] denied on the proposed terms.”  In her closing argument, his
counsel argued that Riley had the right to cancel because financing had not
been approved on the terms he agreed to and that Bossier Country made
misrepresentations by having him sign the installment contract before financing
was approved.

          Therefore, we cannot agree that Riley
failed to plead or prove “that Bossier Country falsely represented, or failed
to disclose, that financing had been approved when he signed the Retail
Installment Contract, or that he detrimentally relied on any such
representation.”  Nor can we agree that Riley did not try his DTPA claims on
this theory.

Bossier Country’s motion for rehearing is
denied.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting)

Rehearing denied

Opinion delivered and
filed April 25, 2007

[CV06]









[1]
          Bossier Country also contends on
rehearing that: (1) this Court erred by holding that a disclaimer in the
Addendum to the MVPO is unenforceable; (2) this Court’s rationale for upholding
the jury’s finding of a “knowing” DTPA violation “makes every violation of the
DTPA in a motor vehicle purchase transaction a ‘knowing’ violation”; (3) this
Court erred by holding that section 17.50(b)(1) of the DTPA does not set a cap
on the amount of mental anguish damages that can be awarded for a knowing
violation; and (4) this Court erred by assessing costs against Bossier Country.





[2]
          Bossier Country characterizes
Riley’s understanding of his right to cancel as a “unique and secret
interpretation” of the Conditional Sales and Delivery Agreement.  However, it
appears from a careful review of Riley’s testimony that he was simply relying
on the two alternative grounds for cancellation explicitly stated in this
document and quoted hereinabove as the basis for his interpretation.